FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

00 JUN -7 AM 11: 19

U.S. DISTRICT COURT
N.D. OF ALABAMA

GLEN L. EATON, et al.,　　　　　　]
　　　　　　　　　　　　　　　　　]
　　Plaintiffs,　　　　　　　　　　]
　　　　　　　　　　　　　　　　　]
　　vs.　　　　　　　　　　　　　 ]　　CV-99-N-0893-W
　　　　　　　　　　　　　　　　　]
WILLIAM A. HOUGH, District　　　 ]
Counsel Department of the Army,　]
U.S. Army Corps of Engineers, et ]
al.,　　　　　　　　　　　　　　　]
　　　　　　　　　　　　　　　　　]
　　Defendants.　　　　　　　　　 ]

ENTERED

JUN 0 7 2000

## Memorandum of Opinion

**I.　　Introduction.**

　　The court has for consideration the defendants' motion for summary judgment filed

March 2, 2000 (Document #9).  Plaintiffs, Glen L. Eaton and Eaton Contract Services, Inc.,

have brought this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").[1]

They are seeking information which relates to United States Government construction

contracts awarded to ECS.  Defendants move for summary judgment asserting that the

responsive documents have either been turned over to Eaton, or withheld pursuant to

various statutory exemptions.  After thoroughly and carefully reviewing the parties'

voluminous submissions, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

---

[1]For purposes of the pending motion, the plaintiffs will be collectively designated as "Eaton."



## II.    Statement of Facts.[2]

This FOIA action arises out of a former contractual relationship between the United States Government and Eaton. Unfortunately, the parties have not presented the court with a significant amount of information concerning Eaton's relationship with the various agencies. However, the limited information indicates that in or around 1994, ECS entered into contracts with the Department of the Army, United States Army Corps of Engineers, Savannah, Georgia ("Savannah Corps"), to complete the following projects: (1) Contract No. DACW01-94-C-0185 - CFC removal and fume hood vent modification, environmental protection agency laboratory, Athens, Georgia; (2) Contract No. DACA 21-95-C-0165 - construct training facility, SOTF Fort Bragg, North Carolina; and (3) Contract No. DACA 21-96-0009 - construct metal building, SOTF, Fort Bragg, North Carolina.

From a review of the evidence, it is unclear as to the underlying facts pertaining to the specifics and resolution of the CFC removal and fume hood vent modification contract and the training facility contract. However, there is evidence indicating that in or around May of 1996, the parties began disagreeing as to the metal building construction contract. In particular, questions were raised concerning the accuracy of the contract specifications and the necessary time it would take Eaton to complete the project. Additionally, during this time, the Savannah Corps inquired as to whether Eaton was complying with the "Buy American Act." Eaton responded that such requirements had been waived. Despite the

---

[2] In developing the statement of fact in this opinion, the court considered those facts claimed to be undisputed by the parties, the parties' respective responses to those claims, and the court's own examination of the evidentiary record. These are facts for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11ᵗʰ Cir. 1984), *cert denied, USX Corp. v. Cox*, 114 S.Ct. 900 (1995).

2

apparent problems, it is unclear from the evidence presented as to whether Eaton completed the metal building construction contract. However, at the May 25, 2000, status conference, Eaton notified the court that he was pursuing various claims arising from the contracts pursuant to certain administrative procedures.

Commencing in April of 1998, Eaton made numerous FOIA requests to various agencies of the United States Government including (1) the Savannah Corps; (2) United States Army Crime Investigation Command; (3) Environmental Protection Agency; (4) United States Army Corps of Engineers, Mobile, Alabama District; (5) Secretary of the Army, General Counsel's office; (6) United States Army Securities Operating Training Facility[3]; and (7) XVIII Airborne Corps. According to a chart provided by Eaton, from April of 1998 to March of 1999, he had over eighty communications with the foregoing agencies.

On April 12, 1999, the plaintiffs filed their complaint against William A. Hough, Phillip J. McGuire, Stephen P. Kinder, Virginia B. Grenier, Calon E. Blackburn, Jr., Rich Lemley and Christine McCommas. In the subsequent months, the defendants submitted to Eaton an initial disclosure and four supplementary disclosures, the last occurring on February 29, 2000. In their motion for summary judgment the defendants argue that they have conducted an adequate search and disclosed all the relevant documents in their possession, except those withheld pursuant to statutory exemptions.

---

[3] The Securities Operating Training Facility is a United States Operations Command facility which houses and provides logistics and administrative support to Army elements involved with the development, testing, and evaluation of Army security and special operations doctrine.

3

### III.    Standard.

Summary judgment should be granted where "the pleadings . . . show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." FED. R. CIV. P. 56(c).  FOIA matters are reviewed de novo, and the

agency bears the burden of justifying nondiclsoure.  5 U.S.C. § 552(a)(4)(B); *Department*

*of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

In FOIA cases, summary judgment is appropriate where the agency proves that it

has "fully discharged its obligations, after the underlying facts and the inferences to be

drawn from them are construed in the light most favorable to the FOIA requester." *Miller*

*v. United States Dep't. of State*, 779 F.2d 1378, 1382 (8th Cir. 1985).  In order to satisfy this

burden, the defendant "must prove that each document that falls within the class requested

either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection

requirements."    *Id.* (*citing National Cable Television Ass'n. Inc. v. Federal*

*Communications Comm'n.,* 479 F.2d 183, 186 (D.C. Cir. 1973)).

To sustain their burden of proof, agencies may submit the declarations of their

officials. *Oglesby v. United States Dep't. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Indeed, the court may rely on such declarations "if they provide as accurate a basis for

decision as would sanitized indexing, random or representative sampling, in camera

review, or oral testimony." *Miscavige v. Internal Revenue Service,* 2 F.3d 366, 368 (11th

Cir. 1993); *See Oglesby*, 920 F.2d at 68 (determining that summary judgment is appropriate

where agency has presented "[a] reasonably detailed affidavit, setting forth the search

terms and the type of search performed, and averring that all files likely to contain

4

responsive materials (if such records exist) were searched"). "A motion for summary judgment adequately underpinned is not defeated simply by bare opinion or an unaided claim that a factual controversy persists" *Alyeska Pipeline Serv. v. EPA,* 856 F.2d 309, 314 (D.C. Cir. 1988). However, if material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not appropriate. *Id.*

## IV.   Discussion.

The general purpose behind the Freedom of Information Act is to provide citizens a statutory right of access to government information. *See John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151 (1989). The statute was designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Department of Air Force v. Rose,* 425 U.S. 352, 361 (1976). However, as articulated by the Eleventh Circuit, "Freedom of Information Act cases are peculiarly difficult." *Miscavige,* 2 F.3d at 367. What the court must do at this juncture is determine whether the responsive searches have been adequate, and whether the agencies have met their burden of showing that those records (or portions thereof) which have been withheld fall within the statutory exemptions claimed. In order to sufficiently address the numerous requests, the court's analysis will examine each agency separately.

### A.   United States Army Corps of Engineers, Savannah, Georgia District.

According to the record, Eaton made requests to the Savannah Corps on April 28 and 30, 1998, June 9, 1998, and July 6, 1998. While the individual requests were quite

extensive, they generally sought information related to either the construction of the training facility and metal building, or the CFC removal and fume hood vent modification contract.

The plaintiff maintains that information explicitly sought in the requests continues to be withheld and undisclosed. In particular, he mentions the absence of "Savannah District file systems," "Corps QA Logs," and "Savannah's Fort Bragg construction department documents." The defendants contend that summary judgment is appropriate as to the FOIA claims related to the Savannah Corps as an adequate search has been conducted and all relevant documentation has been properly released. Additionally, the defendants maintain that any information withheld was proper pursuant to 5 U.S.C. § 552(b)(5).[4]

### 1.  Adequacy of Search.

Where the issue concerns the agency's search, for summary judgment purposes, the agency must demonstrate that it has "thoroughly searched for the requested documents where they might reasonably be found." *Miller*, 779 F.2d at 1383. In *Ray v. United States Dep't. of State*, 908 F.2d 1549, 1558 (11th Cir. 1990) *reversed on other grounds*, 502 U.S. 164 (1991) the Eleventh Circuit set out the following standard for evaluating the adequacy of a FOIA search.

> The adequacy of an agency's search for documents requested under FOIA is judged by a reasonableness standard. Under

---

[4] 5 U.S.C. § 552 provides in relevant part:

**Public information; agency rules, opinions, orders, records and proceedings**
(a) Each agency shall make available to the public information as follows:
(b)This section does not apply to matters that are –
(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

6

this standard, the agency need not show that its search was exhaustive. Rather, the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents. The government agency may meet this burden by producing affidavits of responsible officials so long as the affidavits are *relatively detailed, nonconclusory, and submitted in good faith*. If the government agency meets its burden of proving that its search was reasonable, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith.

(citations omitted)(emphasis added); *See Weisberg v. United States Dep't. of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980)(agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the procedures utilized); *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)("A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials [if such materials exist] were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment").

*Ray, Miller* and *Weisberg* are instructive as they provide examples of when a declaration is, and is not, sufficient to satisfy an agency's initial burden. In *Ray*, the plaintiffs argued that the Immigration and Naturalization Service and the State Department improperly withheld documents from them. In particular, they maintained that the State Department had not conducted a search reasonably calculated to uncover the requested materials. In determining the search was reasonable, the Court of Appeals primarily relied

on the affidavit of Frank Machak, Chief of the State Department's Information Access and

Services Division.  The Court summarized the search as follows:

> (Machak) explained that in response to Ray's request for
> information relating to interviews conducted of Haitian
> returnees by U.S. officials, the State Department searched the
> records of the Department's Office of Visa Services, the Bureau
> of Refugee Programs, and the Bureau of Human Rights and
> Humanitarian Affairs, and found no relevant records.
>
> . . .
>
> Mr. Machak further explained that regarding Ray's request for
> the names of 600 Haitian returnees the State Department
> searched the same offices, as well as the Bureau of Inter-
> American Affairs.

*Id.* at 1558.

In *Miller*, the court found that the State Department had furnished affidavits which

adequately set out in detail the search procedure used in responding to the plaintiff's

request.  *Id.* at 1383.  For example, the agency set forth that it manually searched six years

of files containing at a minimum 20,000 documents, a computer search was done for any

documents created after 1973, organization files outside the central system were searched,

and finally, any potentially responsive document was reviewed in order to determine if it

should be withheld under a statutory exemption.  *Id.* at 1383-84.  Since the affidavits were

sufficiently detailed and included in nonconclusory terms the steps which the agency took

in searching for the requested materials, the burden then shifted to the requestor to

contradict the account of the search or raise an issue of fact as to bad faith.  *Id.* at 1384.

Upon determining the plaintiff had not met its burden, the defendants were found to have

sufficiently documented an adequate search under the Act.

In contrast, in *Weisberg*, the court found that an agency affidavit was not adequately detailed. An example of one of the affidavits at issue stated in pertinent part:

> I have conducted a review of FBI files which would contain information that Mr. Weisberg has requested . . . The FBI files to the best of my knowledge do not include any information requested by Mr. Weisberg other than the information made available to him.

Upon examination of the affidavits, the court noted that they gave no detail as to the scope of the examination, did not denote which files were searched or by whom, did not reflect any systematic approach to document location, and did not provide information specific enough to enable the requestor to challenge the procedures utilized. *Weisberg*, 627 F.2d at 370-71.

Here, to support its adequate search argument the defendants submit declarations from: (1) Warren G. Swartz  - FOIA Officer for the Savannah District (Def. Ex. P & BB); (2) Louis J. Moore - Chief for the Contracting Division, Savannah Corps (Def. Ex. Q); (3) David M. Cannon - Chief for the Resource Management Office, Savannah Corps (Def. Ex. R); (4) Homer G. McBrayer - Chief of the Construction Division, Savannah Corps (Def. Ex. S); (5) William A. Hough - Chief for the Office of Counsel, Savannah Corps (Def. Ex. T); (6) Robert F. Moody - Chief for the Logistics Management Office, Savannah Corps (Def. Ex. U).  In addition, the defendants present documentation denoting the amount of time spent by the Savannah Corps on Eaton's request.  (Def. Exs. GG, HH, II, KK).  Upon review of the foregoing, the court is not convinced that any of the declarations could be considered "reasonably detailed."

9

Of the declarations, only those submitted by Swartz (Def. Ex. P & BB) and Cannon (Def. Ex. R) even attempt to detail the method of the search. However, simply stating that pursuant to the request, the research methods utilized included "checking e-mail messages, databases, and a physical search of records" does not satisfy the "reasonably detailed and nonconclusory" standard. *See Miller,* 779 F.2d at 1383; *Ray,* 908 F.2d at 1558-59. In particular, the court notes the lack of specificity associated with the terms "databases" and "records." Additionally, the record is void of any evidence which, in proper detail, indicates the scope of the examination, what files were searched, or the systematic approach implemented to document the responsive material.

As for the other declarations, (Def. Exs. Q, S, T, & U), the only depiction of the searches therein is that a "good faith effort" was made. Such descriptions fail to even vaguely indicate the search method, the terms searched, or explain how the search was conducted. Without question, these descriptions are indefinite and conclusory, and fail to provide Eaton with information necessary to afford him an opportunity to challenge the adequacy of the search. Based upon the foregoing, it is apparent that the declarations submitted by the various Savannah Corps employees fail to meet the rudimentary "relatively detailed, nonconclusory, and submitted in good faith standard." Accordingly, because the Savannah Corps declarations did not adequately describe the agency's search, issues genuinely exist as to the Savannah Corps's search.[8]

---

[8]The time records presented by the Savannah Corps only strengthen the court's position. (Def. Exs. GG, HH, II, JJ) According to the records, the Savannah Corps spent a total of twelve hours processing Eaton's requests. After reviewing Eaton's voluminous requests to the Savannah Corps, the court finds that it would be extremely difficult to conduct a reasonable search within this time. Moreover, the court finds it enlightening that agencies which were subjected to smaller requests actually spent more time on theirs than did the Savannah

10

2.      5 U.S.C. § 552(b)(5).

Apart from its adequacy of search argument, the Savannah Corps admits that certain documents pertaining to the CFC removal and fume hood vent modification and the training facility construction were explicitly withheld from Eaton.  However, they contend that such withholding was appropriate pursuant to 5 U.S.C. § 552(b)(5), the "deliberative process privilege."

When an agency declines to produce requested documents, it must demonstrate that the claim exemption applies.  In addition, before an agency can withhold interagency documents under the deliberative process privilege it must show that the document is (1) predecisional, i.e., "prepared in order to assist an agency decisionmaker in arriving at this decision;" and (2) deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Florida House of Representatives v. United States Dep't. of Commerce*, 961 F.2d 941, 945 (11th Cir. 1992).  The focus of the deliberative process privilege is "on documents reflecting advisory opinions, recommendations and deliberations." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  However, the process does not protect documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations. *See id.* at 150-54.

---

Corps.  For example, Mobile Corps spent thirty-three hours on its request while the United States Army Criminal Investigation Command and Crime Records Center expended approximately eighty hours conducting its search, review, preparation, and documentation.

11

In support of their exemption argument the defendants submit the declaration of Warren Swartz (Def. Ex. BB). In FOIA cases where a statutory exemption to disclosure has been asserted, declarations can be sufficient for summary judgment purposes if they are specific and detailed enough to provide the necessary information. *Miscavige*, 2 F.3d at 367-69; *see Lesar v. Department of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980) (holding that if the affidavits contain information of reasonable detail, sufficient to place the documents within the exception category and if the information is not challenged by contrary evidence in the record or evidence of agency bad faith, then summary judgment for the Government is appropriate).

Accordingly, the initial question is whether the declaration here contains sufficient information. Unlike the portion of his declaration concerning search methods, Swartz's assertions referring to withheld documents is sufficiently detailed. (Def. Ex. BB). First, he explains that the documents relate to government cost estimates. Next, after explicitly asserting the deliberative process privilege, he states numerous reasons why the withheld documents fall under the privilege. According to Swartz,

> the government costs estimates back-up data is considered a pre-decisional and deliberative document in that it contains crew development methodology, labor, equipment and crew back-up files, subcontractor quotes, and is used to develop cost estimates for contract formation, modifications and claims. The content is deliberative in that its disclosure would expose the agency's thought process and methodology in arriving at the Government's costs estimate.

(Def. Ex. BB). Lastly, he goes into some detail describing the specific harm to the government should the back-up data be disclosed. Based upon the foregoing, the court

12

is convinced that the withheld documents pertaining to government costs estimates are predecisional and deliberative Accordingly, absent some showing of bad faith, Swartz's declaration is sufficient to prove the propriety of the exclusion. *See Miller*, 779 F.2d at 1387.

After reviewing Eaton's response, the court finds no such showing was made. Rather, Eaton presents vague, nonspecific arguments which fail to create a genuine issue of material fact. Consequently, Eaton's request for the undisclosed cost estimate documents will be denied and the defendant is entitled to summary judgment with respect to these particular documents.[8]

## B. United States Army Criminal Investigation Command.

On May 6, 1998, Eaton submitted a FOIA request to the United States Army Crime Records Center ("USACRC"), Fort Belvoir, Virginia. The USACRC is the record holding facility for the United States Army Criminal Investigation Command ("USACIDC"). Eaton's letter consisted of thirty-three separate requests for information generally seeking any and all information concerning Eaton and/or ECS in the possession of the USACRC. In support of their motion for summary judgment the defendants present the declaration of Phillip McGuire ("McGuire"), the Director of the USACRC (Def. Ex. LL). According to McGuire, the agency has conducted an adequate search and furnished the relevant documentation.

---

[8] The court recognizes the plaintiff's argument that the deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need. *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)(articulating an example of "need" is when the documents sought might shed light on government misconduct). However, Eaton's argument is severely undermined as the Court of Appeals explicitly recognized that the "sufficient need" exception is "not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *Id.* at n.8. Accordingly, the plaintiff's argument based upon need is unpersuasive.

13

If pertinent information was withheld, McGuire maintains that it was done so pursuant to statutory exceptions.

### 1.    Adequacy of Search.

It is not entirely clear as to whether Eaton challenges the adequacy of the USACRC's search.[7] Assuming such challenge was made, the court finds that the search was adequate and the standards espoused in *Ray, Miller* and *Weisberg* have clearly been established. McGuire's declaration sets out in specific detail the methodology of the search to such a degree that Eaton had more than an adequate opportunity to challenge the adequacy of the search. Furthermore, a review of the declaration demonstrates the various terms and files searched, as well as a detailed description of how the search was conducted. Accordingly, the court finds that the USACRC has conducted a reasonable search and disclosed any responsive information in its possession not withheld pursuant to a statutory exception.[8]

### 2.    Statutory Exemptions.

Like the Savannah Corps, the USACRC withheld responsive documents pursuant to enumerated statutory exceptions. The bases for withholding portions of these summaries are 5 U.S.C. § 552(b)(2), (b)(5), (b)(7)(C) and (b)(7)(E)[9].

___

[7] Eaton generally alleges that "proof exists that the (USACRC) withheld and/or redacted Eaton documents are in its offices at least at the following locations: Raleigh, Baltimore, Ft. Belvoir, Atlanta, and Baltimore." (Plaintiffs' Response to Defendants' Motion for Summary Judgment p.18). However, he fails to provide any evidence other than the general conclusory statement that "proof" exists. In light of McGuire's detailed declaration, this bare assertion fails to create the necessary genuine issue of material fact that such documents do in fact exist.

[8] The court strongly encourages the Savannah Corps officials to review McGuire's declaration. It is an excellent example of what is meant by "reasonably detailed" and "non-conclusive."

[9] 5 U.S.C. § 552 provides in pertinent part:
**Public Information; agency rules, opinions, orders, records, and proceedings**
(a) Each agency shall make available to the public information as follows:

14

In support of their exemption argument the defendants again point to McGuire's declaration. (Def. Ex. LL). McGuire, in reasonable detail, separately examines and analyzes each exemption asserted. For example, McGuire attests that some of the withheld documents pertain to government fraud investigations where agents followed specific investigative policies, procedures and protocols. *See* 5 U.S.C. § 552(b)(2). Other information was withheld, according to McGuire, because it related to information gathered by agents, which in turn, was used to make recommendation to government officials, which are ultimately acted on by government decision makers both within and outside the USACIDC structure. *See* 5 U.S.C. § 552(b)(5). As stated by McGuire, "FOIA exemption 5 was applied in this case so as to prevent any impairment or injury to the quality of the USACIDC's decisions, or decision making process, with regard to conducting criminal investigations and pursuing evidence that may lead to criminal prosecutions or civil actions on behalf of the Untied States. (McGuire Decl. ¶ 26)." As for documents withheld pursuant to (b)(7)(E) and (b)(7)(C), McGuire attests that releasing them would reveal law enforcement and investigative techniques, and reveal names and other information of law enforcement personnel and witnesses.

---

(b) This section does not apply to matters that are –

(2) related solely to the internal personnel rules and practices of an agency;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(7) records or information complied for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . or (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

In addition to a thorough explanation of the exceptions, McGuire provides an index detailing the information withheld by the USACRC. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the index, McGuire separately sets out in sections each record withheld. McGuire then briefly describes the record withheld and why a certain statutory exemption applies. In addition, he sets out an index of redactions and the applicable exemption employed. (McGuire Decl. ¶ 30).

After reviewing his submission, the court finds that Eaton has failed to create a genuine issue of material fact concerning the defendants' assertion of the statutory exemptions. McGuire describes the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that the material withheld is logically within the domain of the exemption claimed. Thus, the court is convinced that absent a showing of bad faith, the declaration is sufficient to prove the propriety of the exclusion. After carefully reviewing the record, the court does not find any evidence in which a reasonable decisionmaker could infer that McGuire's declaration is tainted by bad faith. Foremost, it appears that Eaton only contests the deliberative process privilege. However, this challenge is supported by conclusory allegations and unfounded factual claims. Accordingly, as to documents withheld by the USACRC pursuant to Eaton's May 6, 1996, FOIA request, the statutory exemptions were properly claimed and the defendant is entitled to summary judgment.

## C.    United States Army Special Operations Command, Fort Bragg, North Carolina.

On June 10, 1998, Eaton submitted two FOIA requests to Ms. Irene Girouard, FOIA Officer, XVIII Airborne Corps, Fort Bragg, North Carolina. On July 20, 1998, the United States Army Special Operations Command (USASOC) received as a referral from the XVIII Airborne Corps, Eaton's June 10 FOIA request. The request sought records relating to the construction of a metal building at the Security Operations Training Facility. On August 3, 1998, the USASOC received a second FOIA request by Eaton, also originally addressed to the XVIII Airborne Corps. This request sought records pertaining to the construction of a training facility at Range 19 on the Security Operations Training Facility.

In support of their motion for summary judgment, the defendants proffer the declaration of Faye C. Wrench, the FOIA officer with the USASOC (Def. Ex. CC). Similar to McGuire, Wrench's declaration sets out in specific detail the methodology of the search to such a degree that Eaton had more than an adequate opportunity to challenge the adequacy of the search. Additionally, Wrench asserts that certain documents were withheld pursuant to 5 U.S.C. § 552(b)(1) and (b)(5).[10] She has also included a detailed index of the documents withheld. There is no indication that Eaton challenges the sufficiency of the USASOC's search or the documents withheld pursuant to 552(b)(1). Rather, it appears as if the only challenge is to the utilization of 552(b)(5).

_____

[10] 5 U.S.C. 552 provides in pertinent part:

**Public Information; agency rules, opinions, orders, records, and proceedings**
(a) Each agency shall make available to the public information as follows:
(b) This section does not apply to matters that are –
(1) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

17

Eaton's challenge is primarily directed at the withholding of the May 22, 1996, draft memorandum addressing the construction of the metal building at the SOTF. However, this argument is somewhat misplaced, as it is undisputed that the memorandum in question was produced by the Savannah Corps. Thus, even it was improperly withheld by the USASOC, to order disclosure would be impractical as Eaton already has it in his possession.

Upon careful review, the court finds that Eaton has not presented a significant challenge to any other withholdings on the part of the USASOC. In light of the declaration presented by Wrench, the evidence before the court indicates that the FOIA requirements for search, disclosure, and withholding have been adequately satisfied. Accordingly, summary judgment in favor of the defendants will be granted as to the FOIA claims directed towards the USASOC.

**D.    XVIII Airborne Corps.**

In or around June 10, 1998, the XVIII Airborne Corps in Fort Bragg, North Carolina, received two FOIA requests from Eaton. The first request sought information related to the construction of a metal building at the Special Operations Training Facility. The second request sought records pertaining to the construction of a range facility at the Special Training Operations Facility.

In support of their motion for summary judgment, the defendants present the declaration of Peggy H. Moneyham ("Moneyham"), a FOIA coordinator with the Information Services Division, Information Technology Business Center, XVIII Airborne Corps and Fort Bragg, North Carolina. (Def. Ex. DD). Moneyham goes into detail to describe the search for the responsive records and lists certain documents withheld pursuant to statutory

18

exemption 5 U.S.C. § 552(b)(5), the deliberative process privilege. Eaton does not appear to challenge the adequacy of the search, but does object to the attempted assertion of the deliberative process privilege. In particular, Eaton questions whether the privilege is applicable to e-mail correspondence between "Hand" and "Martinez" and the "Peterson Encl." (Plaintiff's Response to Defendants' Motion for Summary Judgment p.18).

Moneyham's assertion of the deliberative process privilege is not specific and detailed enough to provide the court with the necessary information. However, because the Savannah Corps is the agency designated to act as the initial denial authority for potentially exempt records relating to requests made to the XVIII Airborne Corps, the court will examine other evidence, primarily the declarations of Warren G. Swartz, the FOIA Officer for the Savannah District, to determine whether the exemptions claimed therein are applicable to the information at issue.

As articulated in the portion of the court's opinion regarding the Savannah Corps, Swartz's reasons for withholding documents pertaining to cost estimates associated with both the CFC Removal and Hood Vent Modification contract and the Fort Bragg training facility contract were sufficiently detailed. Accordingly, for the same reasons, the court finds that the government cost estimate analysis documents initially withheld by the XVIII Airborne Corps also fall under the purview of the deliberative process privilege.

In addition to documents described as "government cost estimate(s)" the XVIII Airborne Corps also initially withheld: (1) e-mail message from Allen Hand to Michael Farmer with recommendations; (2) e-mail message from Diego Martinez to Michael Farmer with recommendations; (3) pre-negotiation objective memo; and (4) pre-negotiation memo

19

for Architect & Engineering Services. After carefully reviewing Swartz and Moneyham's declarations, the court concludes that neither states in sufficient detail the reasons why the privilege applied to the foregoing documents. The court recognizes that the enumerated documentation could possibly pertain to government cost estimates. However, in Moneyham's declaration she expressly referred to certain documents as relating to "government cost estimate." Thus, drawing every reasonable inference in Eaton's favor, the court concludes that without further explanation, the reasonable inference must be that the other withheld documents do not fall under the government cost estimate description.[11]

Accordingly, there being no specific and detailed declaration, the defendants' motion for summary judgment as to withholding the foregoing four documents is denied. However, the motion will be granted as it pertains to the documents expressly described as relating to government cost estimate and as to any challenge of the sufficiency of the search conducted by the XVIII Airborne Corps.

**E.   United States Army Corps of Engineers, Mobile, Alabama District.**

On June 12, 1998, Eaton submitted a FOIA request to the Mobile, Alabama District Corps of Engineers ("Mobile Corps"). At the present time, there is not an objection to the adequacy of the Mobile Corps's search. According to Eaton, "[i]n summary, as for Mobile, Plaintiff does not dispute its apparent employment of good faith efforts at production."

---

[11] In Moneyham's declaration she refers to "attachment 8," a letter from William A. Hough - Chief for the Office of Counsel, Savannah Corps to Eaton in which Hough sets out the documents excluded, and the statutory exemptions asserted. Of particular note is Hough's mention of the withheld e-mails. However, Hough's letter is neither a declaration submitted under oath, nor specific and detailed enough to provide the court with the necessary information. Furthermore, in Hough's declaration (Def. Ex. T), he fails to mention the presence or reasons for withholding e-mails, or any other documents. Accordingly, the court will not accept "attachment 8" as an adequate explanation for withholding the e-mails.

20

(Plaintiff's Response to Defendants' Motion for Summary Judgment p.3). Furthermore, it does not appear that issues related to statutory exemptions arise from the request directed to the Mobile Corps.

Thus, the only issue concerning the Mobile Corps relates to former Mobile Corps employee, David Bowen ("Bowen"). As part of its search, in September of 1999, the Mobile Corps sent Bowen, now a United States Army Engineer in Korea, the following request: "Did you keep a personal day planner (e.g. Franklin Planner)? If so, where is your planner? If you have your day planner for the period of the project, please send it to me. Did you manually archive your e-mail messages? A negative answer is requested."[12] Apparently, Bowen never responded to the September of 1999 letter. Eaton now seeks an order from this court directing the defendants to "prepare a short and direct message to Mr. Bowen as above, for transmittal to Korea via the most expedient means, ordering immediate response to the simple, clear, questions by Mobile." (Plaintiff's Response to Defendants' Motion for Summary Judgment p. 3).

Upon receiving a FOIA request, a government agency must thoroughly search for the requested documents where they might reasonably be found. *Miller*, 779 F.2d at 1383. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Steinberg v. United States Dep't. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). The court finds that the multiple attempts to contact Bowen in Korea constitute a reasonable search. Eaton has not

---

[12]In May of 1999, the Mobile Corps corresponded with Bowen via e-mail. Upon being asked if he had or knew of information pertaining to Eaton, Bowen remarked that a "central file" was kept outside of "Barry's" office, and further, that any duplicates in his possession were left on his desk. (Def. Ex. AA).

21

presented, nor can the court conceive a more reasonable way for Mobile to attempt to locate information which might be in the possession of a former employee who lives in Korea.  In fact, Eaton himself admits that he has no dispute with the Mobile Corps's good faith effort at production.  As such, Eaton's speculation that Bowen may have documents does not undermine the fact that the Mobile Corps conducted a reasonable search for them. To comply with Eaton's request would raise the appropriate burden to a standard greater than reasonable.  Accordingly, the defendants' motion for summary judgment concerning the FOIA request made to the Mobile Corps will be granted and the plaintiffs' request for a court order is denied.

**F.      United States Army Procurement Fraud Division.**

On May 6, 1998, Eaton submitted a FOIA request to the United States Army Procurement Fraud Division ("PFD") located in Arlington, Virginia.  On June 16, 1998, Ms. Christine S. McCommas ("McCommas"), the senior civilian attorney in the PFD, notified Eaton that no responsive documents had been discovered.  Although in a July 8, 1998 letter, Eaton appeared to question the PFD's response, there was no further discussion concerning any potential disagreement.  Furthermore, in his responsive submission, Eaton does not challenge McCommas's response.

In support of their motion for summary judgment the defendants tender McCommas's declaration.  (See Def. Ex. H).  Therein, she presents a detailed and nonconclusory account of the search methods utilized by the PFD.  Additionally, there is no indication that the search was not made in good faith.  In his response, Eaton presents no evidence indicating that the search was not reasonable or was not conducted in good faith.  Rather, his only

challenge centers upon comments made to McCommas by Gregory Vanagel, the local counsel for the Savannah Corps.

Essentially, Eaton contends that Vanagel lied to McCommas concerning the search for records conducted by the Savannah Corps. Although such evidence might be relevant as to the FOIA request submitted to the Savannah Corps, it has no bearing on the search of the PFD's files located in Arlington, Virginia. The undisputed evidence clearly indicates that McCommas conducted a reasonable search of the files and data over which she had control. Simply because a question of fact might be raised as to the Savannah Corps's search of similar records, it does not follow that a question of fact is created as to the PFD's search. Accordingly, there being no evidence in the record to rebut McCommas's assertions, the defendants' motion for summary judgment pertaining to the FOIA request submitted to the PFD is due to be granted.

### G.   Environmental Protection Agency.

It appears as if a FOIA request was made to the Environmental Protection Agency's ("EPA") Washington, D.C., office in June of 1998. Simply stated, the court is uncertain as to the status of this request. The defendants have presented some documents produced by the EPA (Def. Ex. G), but have not presented a declaration conveying that the agency has fully discharged its obligations. The absence of a declaration is particularly troubling in light of Eaton's contention that the EPA has failed to produce responsive documents. (Plaintiff's Submission in Response to Defendants' Motion for Summary Judgment ¶ S). Accordingly, the moving party having not met its initial burden, the motion for summary judgment as to the EPA request will be denied.

23

**V.    Conclusion.**

After carefully reviewing the parties' submissions, the court concludes that summary judgment is warranted as to some of the claims asserted by Eaton. As for the United States Army Criminal Investigation Command, the United States Army Special Operations Command Fort Bragg, North Carolina, United States Army Corps of Engineers, Mobile, Alabama District, and the United States Army Procurement Fraud Division, summary judgment is appropriate in favor of the defendants as to all FOIA claims concerning these agencies. The court concludes that the foregoing have conducted a reasonable search and properly claimed the applicable statutory exemptions. As for the United States Army Corps of Engineers, Savannah, Georgia, District, summary judgment in favor of the defendants is warranted as to those claims seeking the government cost estimate documents withheld pursuant to the deliberative process privilege. However, the court will reserve ruling on the motion for summary judgment as it relates to the Savannah Corps's argument that it has conducted a reasonable search and disclosed all responsive information discovered. Like the Savannah Corps, the government cost estimate documents were properly withheld by the XVIII Airborne Corps. However, at this time, the parties have not provided the court with a proper explanation as to why the exclusion applies to the additional withheld documents, namely the e-mail communications. Lastly, because an appropriate declaration has not been submitted, summary judgment is denied in full as to any claims related to the request submitted to the Environmental Protection Agency.

The court will enter an appropriate order in conformity with this memorandum of opinion.

24

Done, this ___6___ of June, 2000.

 

 

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

25