

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

09 OCT -3 AM 10: 01

U.S. DISTRICT COURT
N.D. OF ALABAMA

GLEN L. EATON, et al.,          ]
                                ]
    Plaintiff(s),          ]
                                ]
vs.                             ]    CV-99-N-0893-W
                                ]
WILLIAM A. HOUGH, District      ]
Counsel Department of the Army, ]
U.S. Corps of Engineers, et al.,]
                                ]
    Defendant(s).          ]

**ENTERED**

### Memorandum of Opinion

OCT 0 3 2000

## I. Introduction

Plaintiffs, Glen L. Eaton and Eaton Contract Services, Inc. ("ECS"), have brought this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").[1] They are seeking information which relates to United States Government construction contracts awarded to ECS. By order of June 7, 2000, partial summary judgment was granted in favor of the United States upon a finding that a majority of the responsive documents sought by Eaton had either been turned over or withheld pursuant to various statutory exemptions. This action is now before the court on the federal defendants supplemental motion for summary judgment [Doc. No. 18], filed July 7, 2000, with respect to the remaining federal agencies. After throughly and carefully reviewing the parties additional submissions, the supplemental motion will be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] For purposes of the pending motion, the plaintiffs will be collectively designated as "Eaton."



## II. Facts[2]

While the facts of this case are more fully set forth in this court's Memorandum Opinion of July 7, 2000, [Doc. No. 16], a brief summary of the material facts is in order. In or around 1994, ECS entered into various contracts with the Department of the Army, United States Corps of Engineers, Savannah, Georgia District ("Savannah Corps"), to complete the following three projects: (1) Contract No. DACW01-94-C-0185 - CFC removal and fume hood ventilation, Environmental Protection Agency ("EPA") laboratory, Athens, Georgia; (2) Contract No. DACA 21-95-C-0165 - construct training facility, SOTF Fort Bragg, North Carolina; and (3) Contract No. DACA21-96-0009 - construct metal building, SOTF, Fort Bragg, North Carolina. In or around May of 1996, the parties contractual relationship grew sour and Eaton subsequently pursued various administrative against the United States Government.

In April of 1998, Eaton made numerous FOIA requests to several government agencies, including (1) the Savannah Corps; (2) United States Army Crime Investigation Command; (3) EPA; (4) United States Corps of Engineers, Mobile, Alabama District ("Mobile Corps"); (5) Secretary of the Army, General Counsel's Office; (6) United States Army Securities Operating Training Facility; and (7) the XVIII Airborne Corps. On April 12, 1999, presumably dissatisfied with the defendant's effort to comply with his FOIA requests, Eaton filed his complaint against William A. Hough, Phillip J. McGuire, Stephen P. Kinder,

---

[2] In developing the statement of facts in this opinion, the court considered those facts claimed to be undisputed by the parties, the parties' respective responses to those claims, and the court's own examination of the evidentiary record. These are facts for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1984), *cert. denied, USX Crop v. Cox*, 114 S. Ct. 900 (1995).

2

Virginia B. Grenier, Calon E. Blackburn, Jr., Rich Lemley and Christine McCommas. Over the course of the next few months, the defendants submitted to Eaton an initial disclosure and four supplementary disclosures, the last occurring on February 29, 2000. Shortly thereafter, the defendants moved this court to grant summary judgment in their favor contending that they had performed an adequate search and had disclosed all relevant documents in their possession, with the exception of those documents withheld pursuant to valid statutory exemptions. By order of June 7, 2000, the motion was granted in part and denied in part.

### III.    Standard

Summary judgment should be granted where "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). FOIA matters are reviewed de novo, and the agency bears the burden of justifying nondiclsoure. 5 U.S.C. § 552(a)(4)(B); *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

In FOIA cases, summary judgment is appropriate where the agency proves that it has "fully discharged its obligations, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. United States Dep't. of State*, 779 F.2d 1378, 1382 (8th Cir. 1985). In order to satisfy this burden, the defendant "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Id.* (citing *National Cable Television Ass'n. Inc. v. Federal Communications Comm'n.*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

3

To sustain their burden of proof, agencies may submit the declarations of their officials. *Oglesby v. United States Dep't. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Indeed, the court may rely on such declarations "if they provide as accurate a basis for decision as would sanitized indexing, random or representative sampling, in camera review, or oral testimony." *Miscavige v. Internal Revenue Service*, 2 F.3d 366, 368 (11th Cir. 1993); *See Oglesby*, 920 F.2d at 68 (determining that summary judgment is appropriate where agency has presented "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched"). "A motion for summary judgment adequately underpinned is not defeated simply by bare opinion or an unaided claim that a factual controversy persists." *Alyeska Pipeline Serv. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988). However, if material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not appropriate. *Id.*

## IV. Discussion

The general purpose behind Freedom of information Act is to provide citizens a statutory right of access to governmental information. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). The statute was designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976). While there are exemptions from disclosure set forth in the Act, "these limited exceptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the act." *Id.* With the foregoing

principles in mind, the court must now determine: (1) whether the EPA has submitted an adequate declaration certifying that the agency has fully discharged its FOIA obligations; (2) whether the Savannah Corps' additional search for responsive documents was "reasonable;" and (3) whether the XVIII Airborne Corps has met their burden of demonstrating that the e-mail communications and pre-negotiation memos that were withheld from Eaton fall within the statutory exemptions claimed.[3] For purposes of clarity, the court's analysis will examine each agency separately.

### A.  EPA

According to the record, on June 12, 1998, Eaton submitted a FOIA request to the EPA seeking information pertaining to a contract he had been awarded by the U.S. Army Corps of Engineers for the CFC removal and Fume Hood Vent Modification at EPA's National Exposure Research Laboratory in Athens, Georgia. In their initial motion for summary judgment, defendants took the position that the EPA had fulfilled its statutory obligations by releasing all information/documentation relevant to Eaton's FOIA request. The motion was denied, however, because the EPA failed to produce a single affidavit certifying that a reasonable search for responsive documents had been performed. In light of Eaton's contention that the EPA continued to withhold responsive documents after his initial

---

[3] Pursuant to this court's order of June 7, 2000, summary judgment has been granted in favor of the United States Army Criminal Investigation Command, the United States Army Special Operations Command Fort Bragg, North Carolina, United States Army Corps of Engineers, Mobile, Alabama District, and the United States Army Procurement Fraud Division as to all FOIA claims concerning these agencies. The court concluded that the foregoing agencies conducted a reasonable search and properly claimed the applicable statutory exemptions. As for the Savannah Corps and the XVIII Airborne Corps, summary judgment was granted as to those claims seeking cost estimate documents withheld pursuant to the deliberative process privilege. However, the court reserved ruling on the motion for summary judgment as it related to the Savannah Corps' argument that it had conducted a reasonable search and the XVIII Airborne Corps' explanation as to why the deliberative process privilege applies to certain e-mail communications and pre-negotiation memos. Additionally, since an appropriate declaration was not submitted, summary judgment was denied in full as to all claims related to the requests submitted to the EPA.

request,[4] the court found the EPA's failure to proffer a declaration particularly disturbing. In their supplemental motion for summary judgment, the defendants have attached the declaration of Luther E. Mellen, III ("Mellen"), Office of Administration and Resources Management, EPA, Washington, D.C. The court must now determine whether Mellen's affidavit is sufficient to satisfy the agency's initial burden of proving that its search was reasonable. *See Ray v. United States Dep't. of State*, 908 F.2d 1549 (11th Cir. 1990), *reversed on other grounds*, 502 U.S. 164 (1991).

Where the adequacy of the agency's search is at issue, for summary judgment purposes, the agency must demonstrate that it has "thoroughly searched for the requested documents where they might reasonably be found." *Miller*, 779 F.2d at 1383. In *Ray*, 908 F.2d at 1558, the Eleventh Circuit set out the following standard for evaluating the adequacy of a FOIA search.

> The adequacy of an agency's search for documents requested under FOIA is judged by a reasonableness standard. Under this standard, the agency need not show that its search was exhaustive. Rather, the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents. The government agency may meet this burden by producing affidavits of responsible officials so long as the affidavits are *relatively detailed, nonconclusory, and submitted in good faith*. If the government agency meets its burden of proving that its search was reasonable, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith.

---

[4] Eaton's second FOIA request, submitted on August 9, 1998, specifically alleged that the EPA had "withheld material documents and files from its [original] response . . ." (Def. Supp. Ex. 6).

6

(citations omitted)(emphasis added); *see also Weisberg v. United States Dep't. of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980)(agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the procedures utilized); *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)("A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials [if such materials exist] were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment"). While it is not necessary for the agency to supply affidavits or declarations from each individual who participated in the actual search, *Carney v. Dep't of Justice*, 19 F.3d 807, 813 (2nd Cir. 1994), an affidavit from a supervisory agency official must be based on actual knowledge rather than mere speculation. *See generally SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

  Applying the foregoing principles to the facts of the present matter, the defendants supplemental motion for summary judgment with respect to the EPA is due to be denied. Despite the explicit instructions set forth in this court's July 7, 2000 Memorandum Opinion, the EPA has fallen far short of satisfying its FOIA obligations. This shortfall is obvious in two respects. First, according to Mellon's declaration, Eaton's June 12, 1998 FOIA request was directed to two separate EPA offices for processing. Those two offices were (1) the Office of Administration and Resource Management, Washington, D.C. and (2) the EPA's National Exposure Research Lab in Athens, Georgia ("Athens Lab"). Although Mellon's certification

indicates that Ms. Rosemarie C. Russo, Director of the Athens Lab, "responded to plaintiff's June 12, 1998, FOIA request by providing him with all responsive documents located in that office," the record is absolutely void of any evidence suggesting Mellon was in a position to vouch for the reasonableness of a search conducted by a separate office. In other words, while Mellon need not actually participate in the Athens lab's search, his affidavit must establish that he had actual knowledge of the search he purports to describe. *See* Fed. R. Civ. P. 56(e) (providing that "[an affidavit] shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Under the present record, however, it appears that Mellon's testimony simply repeats the conclusory assertions contained in Ms. Russo's responsive letter to Eaton. Moreover, even if this court accepted Mellon's certification on behalf of the Athens Lab, a one sentence assertion that "[Ms. Russo] provid[ed] him all responsible documents located in that office" certainly does not qualify as a "reasonably detailed" and "non-conclusory" certification. *See Ray*, 908 F.2d at 1558.

Additionally, the court is not convinced that Mellon's declaration on behalf of EPA's Washington, D.C. office can be considered "reasonably detailed." In fact, Mellon's affidavit simply states that "Tony Castro of my staff conducted a search of all files related to the Project . . . ." Similarly, in response to Eaton's second FOIA request (a request contending that the EPA withheld material documents from its original response), Mellon certifies that his office "performed a thorough search for any documents." Similar to this court's criticism of the Savannah Corps' initial search, Mellon's affidavit and accompanying exhibits provide

8

absolutely no detail as to the scope of the examination, fail to identify which "files" were searched, and do not reflect any systematic approach to document location. Without question, the descriptions contained in the affidavit are indefinite and conclusory, and fail to provide Eaton with information necessary to afford him an opportunity to challenge the adequacy of the agency's search. For this reason, a genuine issue of material fact exists as to whether the EPA uncovered and released all responsive documents it its possession. Accordingly, the defendants motion for summary judgment will be denied as it relates to the EPA.

### B. United States Corps of Engineers, Savannah, Georgia District

According to the record, between the months of April and July of 1998, Eaton made FOIA requests to the Savannah Corps seeking information related to either the construction of the training facility and metal building, or the CFC removal and fume hood vent modification. Eaton maintains that information explicitly sought in the requests continues to be withheld and undisclosed. In particular, he mentions the absence of "Savannah District file systems," "Corps QA Logs," and "Savannah's Fort Bragg construction department documents." In their initial motion for summary judgment, the defendants maintained that an adequate search for the documents had been conducted and all relevant documentation had properly been released. This court, however, was not convinced that any of the declarations submitted by officers/employees of Savannah Corps were "reasonably detailed" and, therefore, concluded that issues genuinely existed as to the adequacy of the Savannah Corps' search. Upon receiving supplemental documentation, declarations, and certifications from the Savannah Corps, the court must once again

9

determine whether the agency satisfied its initial burden of proving that its search was reasonable.

In response to this court's concerns as to the adequacy of their initial search, the Savannah Corps has provided the court with supplementary declarations from: (1) Warren G. Swartz - FOIA Officer for the Savannah District (Def. Ex. FF); (2) Louis J. Moore - Chief for the Contracting Division, Savannah Corps (Def. Ex. II); (3) Homer G. McBrayer - Chief of the Construction Division, Savannah Corps (Def. Ex. KK); (4) William A. Hough - Chief for the Office of Counsel, Savannah Corps (Def. Ex. JJ); (5) Robert F. Moody - Chief for the Logistics Management Office, Savannah Corps (Def. Ex. GG); and Tami Garret - Chief of the Resource Management Office, Savannah Corps (Def. Ex. HH).

Upon a close review of the additional declarations, it is abundantly clear that the standards espoused in *Ray* and *Miller*, *supra*, have been satisfied. In contrast to the affidavit submitted on behalf of the EPA, the affidavits of each responsible officer of the Savannah Corps sets out in specific detail and in non-conclusory terms the methods utilized by the agency in an attempt to locate all records relevant to Eaton's FOIA request. Specifically, each officer has certified that, either personally or through named employees acting under their supervision, they have "conducted a visual and physical check of the central files, personal files, retired files, computer database and electronic mail in all file cabinets, record-holding areas, and individual desks in the Savannah District Contracting Division." (Def. Ex. FF, GG, HH, II, JJ, KK). Except for those documents withheld pursuant to valid FOIA exceptions, all documents responsive to Eaton's FOIA request were made available for Eaton's personal viewing and photocopying on the 18th and 19th of May, 1998.

Similarly, upon receipt of Eaton's appeal of the "no record" denials, each responsible officer has certified that, utilizing search techniques identical to those set forth above, an additional search was performed. Even after the additional search, however, no records responsive to any of Eaton's FOIA requests were located. Based on these additional, more detailed submissions, the court concludes that the search conducted by the Savannah Corps was reasonable and, therefore, afforded Eaton a sufficient opportunity to challenge the adequacy of the agency's search. *See Ray*, 908 F.2d at 1558. Having met its burden of proving that search was reasonable, the burden now shifts to Eaton to rebut the Corps' evidence by showing the search was unreasonable or was conducted in bad faith.

In his supplemental reply, however, Eaton presents absolutely no evidence of unreasonableness or bad faith on the part of the Savannah Corps. Instead, he makes the conclusory assertion that defendants continued production of responsive documents at this "late stage" undercuts the agency's argument that its search was reasonable. (Plf. Supp. Reply, p. 2-3). The Court disagrees. In reviewing an agency's response to a FOIA request, the issue before the court is "not whether any further documents might conceivably exist but whether [the agency's] search for responsive documents was adequate." *Goland v. CIA*, 607 F.2d 339, 369 (D.C. Cir. 1978). The court is satisfied that the Savannah Corps has presented reasonably detailed, non conclusory affidavits demonstrating the reasonableness of its additional search. If anything, the nature and timing of these additional documents reveals the extent to which the Savannah Corps went to respond to Eaton's FOIA request. Accordingly, the defendants motion for summary judgment with respect to the FOIA request submitted to the Savannah Corps is due to be granted.

11

### C.    XVIII Airborne Corps

In or around June 10, 1998, Eaton made FOIA requests to the XVIII Airborne Corps in Fort Bragg, North Carolina, seeking information pertaining to the construction of a metal building and/or a range facility at the Special Operations Training Facility ("SOTF"). In support of its initial motion for summary judgment, the defendant's presented the declaration of Peggy H. Moneyham ("Moneyham"), a FOIA coordinator with the Information Services Division, Information Services Division, XVIII Airborne Corps, Fort Bragg. Moneyham's declaration basically detailed the agency's search method, the release of 607 responsive documents, and the withholding of 56 documents pursuant to 5 U.S.C. § 552(b)(5), the deliberative process privilege. While Eaton did not challenge the adequacy of the agency's search, he took issue with its assertion of the deliberative process privilege to justify the withholding of:

>   (1) cost estimate analysis documents;
>   (2) e-mail message from Allen Hand to Michael Farmer with recommendations;
>   (3) e-mail message from Diego Martinez to Michael Farmer;
>   (4) pre-negotiation objective memo; and
>   (5) pre-negotiation memo for Architect and Engineering Services.

Although this court found that the requested cost estimate documents fell within the purview of the deliberative process privilege,[5] summary judgment was denied with respect to the e-mail communications and pre-objective memorandums because the declarations failed to sufficiently detail the reasons why the privilege was applicable. However, upon a

---

[5] The declarations of Warren G. Swartz, the FOIA Officer for the Savannah District (the initial denial authority for determining the release of referrals from the XVIII Airborne Corps), were deemed sufficiently detailed to justify the assertion of the deliberative process privilege by the XVIII Airborne Corps.

thorough review of the additional declarations and certifications provided by the XVIII Airborne Corps and the Savannah Corps, the court finds that the foregoing issue has been rendered moot and, therefore, summary judgment is due to be granted in favor of the defendants.

With respect to the pre-negotiation memos, the declaration of Warren G. Swartz ("Swartz"), Assistant District Counsel, Savannah, Georgia District, indicates that deliberative process privilege was improperly asserted due to a mis-communication between the Savannah and XVIII Airborne Corps. According to the affidavit of Swartz, the Office of Counsel in the Savannah District, the Initial Denial Authority for determining the release of referrals from the XVIII Airborne Corps, did not receive Moneyham's referral of the pre-negotiation memo's until July 6, 2000.[6] Upon review of the pre-negotiation memos, however, Schwartz determined that, "in considering the 'foreseeable harm' standard established by the United States Attorney General for application of exemption 5 of the FOIA to a release determination of these documents, it has no reason for recommending that these documents be withheld from Mr. Eaton." (Def. Supp. Motion, p. 2). Accordingly, by subsequently releasing the pre-negotiations memos to Eaton, any argument that the privilege was inappropriately asserted has been rendered moot.

Similarly, rather than providing the court with a more detailed explanation of why the e-mail communications fall within the purview of the deliberative process privilege, the

---

[6] Moneyham's January 31, 2000 declaration indicated that the pre-negotiation documents were forwarded to the Savannah Corps and that the Corps took action to withhold these documents. In support of this contention, Moneyham cites a September 22, 1998 letter from the Savannah Corps to Eaton. The Corps letter, however, suggests that the Corps only considered and took action with respect to the government's cost estimate for contract number DACA21-95-C-0165.

13

Office of Counsel in the Savannah District has simply decided to release the e-mails to Eaton. More specifically, the Office of Counsel has determined that, due to the lapse of time between the initial denial in September of 1998 and this court's order in July 2000, the "foreseeable harm" standard is no longer applicable because the status of the Fort Bragg construction contracts has changed substantially. Therefore, while Swartz provides the court with more than sufficient information to justify the assertion of the privilege in the first instance,[7] the decision to release the e-mails to Eaton has rendered the issue moot.

Nevertheless, in his reply submission, Eaton contends that the Savannah Corps' belated decision to release the e-mail communications "calls into question the validity of other exemptions Defendant's claim." (Plf. Supp. Reply, p. 4). Mere speculation on the part of Eaton, however, is simply insufficient to raise an inference of bad faith on the part of agency decision-makers. This is especially true in light of the fact that the assertion of the privilege by the Savannah Corps (as Initial Denial Authority for the XVIII Airborne Corps) simply has no bearing on the validity of the assertion of that same privilege by the Mobile Corps or the United States Army Procurement Fraud Division. Accordingly, in light of the fact that the e-mail communications and pre-negotiation memos are currently in Eaton's possession, summary judgment in favor of the government will be granted as to the FOIA claims directed to the XVIII Airborne Corps.

---

[7] Swartz's declaration specifically asserts that the privilege was initially asserted with respect to the e-mail communications because release of those messages "would cause harm to the Government's decision-making position, as the messages reflected the project manager's opinions and recommendations to his superiors and the contracting officer on potential courses of action." Therefore, while the issue is current moot, based on Swartz's affidavit, the court is convinced that the initial withholding of e-mails pertaining to the status of the Fort Bragg construction contracts was predecisional and deliberate. *See Florida House of Representatives v. United States Dep't. Of Commerce*, 961 F.2d 941, 945 (11th Cir. 1992).

## V. Conclusion

Upon a thorough review of the defendants additional submissions, the court concludes that summary judgment is due to granted in favor of the Savannah Corps and XVIII Airborne Corps, but denied with respect to the EPA. As described above, the detailed affidavits submitted by the Savannah Corps clearly indicates that the agency's search for responsive documents was reasonable and conducted in good faith. Additionally, since the XVIII Airborne Crops has waived their assertion of the deliberative process privilege with respect to certain e-mails communications and pre-negotiation memos, Eaton's argument that the privilege was inappropriately asserted has been rendered moot. However, because a genuine issue of material fact exists as to whether the EPA performed a reasonable search and disclosed all relevant information, summary judgment is due to be denied with respect to the EPA.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 29th of September, 2000.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE